**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ROLE MODELS AMERICA, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 01-1595 (RMU) |
| | : | | |
| v. | : | Document No.: | 65 |
| | : | | |
| FRANCIS HARVEY, | : | | |
| Secretary of the Army,[1] *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANTS' MOTION TO DISMISS

**I.   INTRODUCTION**

The plaintiff, Role Models America, Inc. ("RMA"), brings suit against the defendants, the Secretary of the Army and the Secretary of the Department of Education, for wrongfully depriving the plaintiff of a fair opportunity to compete for and acquire a surplus military base located at Fort Ritchie ("the Fort Ritchie property"). The plaintiff alleges that the defendants violated the Administrative Procedures Act, 5 U.S.C. § 702 ("APA"), and the Defense Base Closure and Realignment Act, 10 U.S.C. §§ 2901 *et seq.* ("DBCRA"). In particular, the plaintiffs allege that the defendants failed to properly screen parties who were interested in the Fort Ritchie property before committing to convey the property to a state-created development corporation, PenMar Development Corporation ("PenMar"). The plaintiff also claims that PenMar will immediately sell, or "flip," the property to a third party, Corporate Office Properties Trust ("COPT"). Because COPT allegedly plans to build two modern buildings on the site, the

---

[1] Francis Harvey, as the current Acting Secretary of the Army, is automatically substituted in place of the previous Secretary of the Army, Les Brownlee, as the proper defendant. FED. R. CIV. P. 25(d)(1).

plaintiff claims that the Secretary of the Army's ("the Army") proposed conveyance of the Fort Ritchie property to PenMar violates the APA and the National Historic Preservation Act, 16 U.S.C. §§ 470 *et seq.* ("NHPA"). The defendants move to dismiss arguing that the D.C. Circuit's previous rulings in this case bar some of the plaintiff's claims and that the plaintiff lacks standing to bring its remaining claims. Because the plaintiff cannot identify a personal, redressable injury for its APA, DBCRA or NHPA claims and because the D.C. Circuit's rulings bar some of the plaintiff's claims, the court grants the defendants' motion to dismiss.

## II. BACKGROUND

### A. Factual History

The court takes a step back to review the protracted procedural history of this case. The case originates on September 8, 1995, when Congress designated the Fort Ritchie property for closure under the Defense Base Realignment and Closure Act ("DBCRA"), 10 U.S.C. § 2901 *et seq.* Am. Compl. ¶¶ 16, 18. After its closure, the Fort Ritchie property became surplus real property available for purchase by third parties under the Federal Property Administrative Services Act ("FPASA"), 40 U.S.C. §§ 101 *et seq.*, and under the DBCRA. Am. Compl. ¶ 18; *Role Models Am. Inc. v. White*, 193 F. Supp. 2d 76, 77 (D.D.C. 2002) ("*Role Models I*"). The DBCRA creates statutory procedures for the sale of closed bases. Specifically, the DBCRA requires that the Secretary of Defense and a Local Redevelopment Authority ("LRA")[2] conduct a screening for non-commercial uses of the land by issuing a notice of the surplus real property to

---

[2] Local Redevelopment Authorities ("LRAs") are entities "established by State or local government and recognized by the Secretary of Defense." 24 C.F.R. § 586.5.

both (1) representatives of the homeless and (2) "other interested parties." 10 U.S.C. § 2905(b)(7)(f). Once the LRA takes these steps and formulates a redevelopment plan for the property, the LRA may then submit the plan to the Secretary of Housing and Urban Development ("HUD") for approval. *Id.*

The plaintiff, RMA, is a non-profit Maryland corporation seeking to establish a military-style high school for at-risk youth.[3] Mem. Op. (May 18, 2005) ("*Role Models III*") at 2. In 1996, RMA sought to acquire the Fort Ritchie property for the site of its school. Am. Compl. ¶ 3. The plaintiff previously rented the property. *Id.* ¶ 53.

In 1997, the state of Maryland designated PenMar as the LRA for implementing the local redevelopment plan at the Fort Ritchie property. Am. Compl. ¶¶ 25-26. According to the plaintiff, however, PenMar denied it an opportunity to compete for the Fort Ritchie property. *Id.* ¶ 136. On May 10, 2002, the plaintiff filed for Chapter 11 bankruptcy, *id.* ¶ 151, and four days

---

[3] The plaintiff amended its complaint to explicitly allege that it is a homeless provider and that the defendants' failure to re-screen for homeless providers in 2003 deprived it of an opportunity to acquire the Fort Ritchie property. Am. Compl. ¶ 80. These assertions are contrary to the unequivocal declarations of the D.C. Circuit and this court. The D.C. Circuit concluded that it could not imagine how RMA "could possibly have interpreted a notice entitled Homeless Assistance Outreach Initiative as an invitation to apply for the Fort Ritchie Property," because RMA is an organization devoted to establishing schools for at-risk minors. *See Role Models Am. Inc. v. White*, 317 F.3d 327, 331 (D.C. Cir. 2003) ("*Role Models II*") at 332. This court also rejected the plaintiff's "obtuse" argument that it is a homeless provider by reminding "the plaintiff that it initially brought suit because, *as an education provider,* it did not receive adequate notice of the availability of the surplus property *because the notice was directed at homeless initiatives.*" Mem. Op. (May 18, 2005) ("*Role Models III*") (emphasis added). The court respects "issues that were decided either explicitly or by necessary implication" in this litigation. *Dept. of Labor v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997) (quoting *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C. Cir. 1983)). To be clear, the plaintiff is not a representative of the homeless, it was not entitled to compete for the property as a homeless provider and it cannot demonstrate that it suffered an injury because of the defendants' failure to conduct a new homeless screening.

later, the defendants approved PenMar's plan for the Fort Ritchie property and purported to convey the property to PenMar. *Id*. ¶ 118. Subsequently, in 2004, PenMar voted to sign a Purchase and Sale Agreement to sell Fort Ritchie Property to COPT. *Id*. ¶ 60.

### B.  Procedural History

After an unsuccessful attempt to acquire the Fort Ritchie property in 2001, the plaintiff brought suit asking the court to enjoin the conveyance from the Army to PenMar. *Role Models Am. Inc. v. White*, 317 F.3d 327, 331 (D.C. Cir. 2003) ("*Role Models II*"). The plaintiff alleges that the defendants did not follow the required procedures under the DBCRA, thereby depriving the plaintiff of the opportunity to compete for and acquire the Fort Ritchie property. Am. Compl. ¶ 145.

The D.C. Circuit ruled on February 3, 2003 that the defendants' conveyance procedures were defective. *Role Models II*, 317 F.3d at 333. Specifically, the D.C. Circuit ruled that the defendants failed to give notice of the availability of the property to potential public benefit conveyees, like the plaintiff. *Id*. The circuit court remanded the case, instructing this court to enter a permanent injunction against the conveyance from the Army to PenMar until the defendants remedied the procedural errors of the screening process. *Id.* at 333-34. In October 2003, the defendants issued remedial notices and conducted a screening of "other interested parties" like RMA who may be eligible to obtain the property. *Role Models III*. The plaintiff submitted its application for a no-cost public benefit conveyance of the property. *Id*. at 14. Defendant Department of Education, however, subsequently denied the plaintiff's application. *Id*.

On October 15, 2004, the defendants moved to dismiss, alleging that they cured all procedural deficiencies as required by the D.C. Circuit. *Id.* at 12-17. The court denied their motion, concluding that although the defendants conducted the additional screening, the defendant did not conduct the screening before it submitted the redevelopment plan to HUD as required by the DBCRA. *Id.* at 16-17. Consequently, the defendants remained enjoined from conveying the property to PenMar. *Id*.

On January 1, 2006, the plaintiff amended its complaint to argue that it is a homeless provider and that PenMar did not properly screen for homeless interests when it issued remedial notices in 2003. Am. Compl. ¶¶ 80, 85. The amended complaint also alleges that the defendants violated the NHPA by agreeing to convey the property to PenMar. *Id*. ¶¶ 141-145. On February 17, 2006, the defendants moved to dismiss the plaintiff's complaint, claiming that the plaintiff lacks standing to bring its complaint under the APA, the DBCRA, or the NHPA. The court now turns to the defendants' motion to dismiss.

### III.   ANALYSIS

#### A.   Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B. The Court Grants the Defendants' Motion to Dismiss

The defendants move to dismiss arguing that the plaintiff lacks standing to bring claims under the DBCRA and the NHPA and because the APA does not confer independent subject-

matter jurisdiction. *See generally* Defs.' Mot. The plaintiff counters that it has standing under both the DBCRA and the NHPA because it suffered an injury when it was deprived of the opportunity to compete for and acquire the Fort Ritchie property. Pl.'s Opp'n at 24, 29. Because the plaintiff has neither a cognizable injury-in-fact under the DBCRA nor a redressable injury, and because the plaintiff's alleged injury is not an interest protected by the NHPA, the plaintiff lacks standing to bring its claims.

### 1. Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. ART. III, § 2, cl. 1. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary

judgment motion will be taken to be true." *Id.* at 899 (citing Federal Rule of Civil Procedure 56); *accord Florida Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

The test for standing shifts focus when a plaintiff challenges an agency's failure to comply with a procedural requirement. *Florida Audubon*, 94 F.3d at 664 (citing *Defenders of Wildlife*, 504 U.S. at 572 n.7). In such cases, as long as the procedural requirement is designed to protect a threatened, concrete interest of the plaintiff, the violation is sufficient to grant the plaintiff standing. *City of Waukesha*, 320 F.3d at 234. To ensure that the plaintiff's interest is more than a general interest common to all members of the public, however, the procedural-rights plaintiff must show "that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest." *Id.* (citing *Florida Audubon*, 94 F.3d at 664).

### 2. The Plaintiff Lacks Standing to Bring Its DBCRA Claim

The DBCRA requires the LRA to conduct a screening of both homeless providers and "other interested parties" before submitting a redevelopment plan to HUD for approval. *Role Models II,* 317 F.3d at 329.  With regard to the screening of homeless providers, the defendants allege that because the plaintiff is not a homeless provider, the plaintiff could not have suffered any injury when the defendants did not re-screen for homeless interests.  Defs.' Mot. at 8-13.  The plaintiff contends that it is a homeless provider and that it was denied an opportunity to compete for the property as a result of the defendants' re-screening only for "other interested parties."  Am. Compl ¶ 139.  The Circuit previously ruled, however, that the plaintiff is not a homeless provider.  *Infra*, n.2.  Therefore, the plaintiff can show no redressable injury**.**

With regard to the screening of "other interested parties," the defendants contend that the plaintiff received actual notice of the remedial screening for other interested parties, indicating the availability of the land, thereby satisfying the defendants' obligation requirement to screen for "other interested parties."  Defs.' Mot. at 2-3; Pl.'s Opp'n at 11.  The plaintiff argued in a previous complaint that the defendants violated the DBCRA by not properly screening for "other interested parties."  *Role Models II*, 317 F.3d at 327.  The D.C. Circuit agreed with the plaintiff, identifying the deficiencies in the defendants' procedures and directing them to perfect the screening process.  *Id.* at 329-330.  The court instructed the defendants to re-conduct a public benefit conveyance screening and accept only HUD-approved LRA redevelopment proposals.  *Id.* at 333.  The plaintiff does not deny that it received actual notice of the remedial screening for "other interested parties."  Indeed, the plaintiff responded to this notice, and its application was rejected.  Pl.'s Opp'n at 11.

The plaintiff protests the defendants' failure to *simultaneously* conduct a re-screening for homeless interests and a screening for "other interested parties." Am. Compl. ¶ 139. Because of this alleged failure to conduct these screenings simultaneously, the plaintiff claims that it has still been deprived the opportunity to acquire the Fort Ritchie property.[4] *Id*. In essence, the plaintiff contends that the two screenings had to be done at the same time to comport with the DBCRA requirements and the D.C. Circuit's instructions. *Id*. The D.C. Circuit's instructions on remand, however, did not indicate that the defendants had to complete both processes simultaneously. *Role Models II*, 317 F.3d at 329 (stating that notices of interest from homeless organizations and "other interested parties" are to be considered on "separate, parallel tracks"). Simply put, the Circuit only required the defendants to screen for "other interested parties." *Id.* at 332. It necessarily did not require the defendants to conduct both processes simultaneously. Therefore, the plaintiff cannot demonstrate that the defendants failed to comply with the DBCRA requirements, and it has no standing to pursue its claims. *Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.* 454 U.S. 464, 472 (1982) (holding that the injury must be fairly traceable to the challenged action to be redressable by the court).

### 3. The Plaintiff Lacks Standing to Bring Its NHPA Claim

The plaintiff also claims that the defendants' proposed conveyance of the Fort Ritchie property to PenMar violates the NHPA. Am. Compl. at 65. The plaintiff contends that the defendants violated the NHPA by contracting to convey the property to PenMar after knowing

---

[4] As stated in the previous paragraph, however, the plaintiff received notice of the public conveyance screening and, in fact, submitted an application. *Role Models III* at 14. The plaintiff, therefore, had an opportunity to compete for the Fort Ritchie property as an "other interested party."

that PenMar had previously contracted to "flip" the land to COPT with plans to build two large buildings on one of the Fort Ritchie property's historic fields. Am. Compl. ¶¶ 121, 125, 159-160. The plaintiff argues that during the period in which the plaintiff previously rented the Fort Ritchie property from PenMar, PenMar used the NHPA strategically to benefit itself and harm the plaintiff. Am. Compl. ¶ 127. Specifically, in February 2001, PenMar sued the plaintiff in Maryland State Court for placing two flags and flagpoles on the property which, PenMar argued, violated the NHPA. *Id.* ¶ 128. The defendants challenge the plaintiff's arguments by alleging that the plaintiff lacks standing to bring these claims under the NHPA because of its failure to "connect the alleged violations to any injury that it is suffering or will suffer or any interest that it has." Defs.' Mot. at 15.

### a.  Legal Standard for Judicial Review of Agency Actions

NHPA claims are reviewed pursuant to the APA. *Nat'l Trust for Historic Pres. v. Blanck*, 938 F. Supp. 908 (D.D.C. 1996). The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the

choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (stating that "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

### b. The Plaintiff Lacks Standing to Bring its APA Claims

To bring suit under the APA, the plaintiff must demonstrate not only that it has suffered a redressable injury that is fairly traceable to the defendant's conduct, but also that the injury is within the zone of interests protected by the NHPA. *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001) (internal citations omitted). Here, however, the plaintiff's primary alleged injury is the denial of an opportunity to acquire the Fort Ritchie property. Am. Compl. ¶ 161. As a remedy, the plaintiff asks the court to convey the land directly to RMA, to award the plaintiff the

estimated value of the land or to require the defendants to reopen the screening process. *Id.* ¶ 163.

The purpose of the NHPA is to preserve historic sites for public use. 16 U.S.C. §§ 470-1(4)-(5); *Mont. Wilderness Ass'n v. Fry,* 310 F. Supp. 2d 1127, 1151 (D. Mont. 2004). A party dedicated to preserving such resources has standing to sue under the statute. *Pres. Coal. of Erie County v. Fed. Transit Admin.*, 129 F. Supp. 2d 551, 561 (W.D.N.Y. 2000). The plaintiff, however, is dedicated to providing education to at-risk youth and seeks only to preserve its opportunity to obtain the Fort Ritchie property under the DBCRA. *See generally* Am. Compl. The NHPA does not protect the right to acquire property, and this relief consequently is not within the zone of interest protected by the statute. *Ass'n of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 153 (1970) (stating that the interest sought to be protected by the complaint has to be within the zone of interest to be protected or regulated by the statute in question); *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031, 1039 (8th Cir. 2002) (holding that the plaintiff did not have standing because it was not able to demonstrate how its economic interests fell within the zone of interests protected by the NHPA); *Pye*, 269 F.3d at 467-468 (stating that the plaintiffs had standing because they demonstrated a concrete injury and were suing to preserve a historic cemetery adjacent to their land); *Lemon v. Harvey*, 2006 WL 2465710, at *7 (D.D.C. Aug. 25, 2006) (stating that neighbors to the Fort Ritchie property lacked standing to bring NHPA challenges to the conveyance of the property for commercial development). Because the

plaintiff's alleged injury is not an interest protected by the NHPA, the court grants the defendants' motion to dismiss the plaintiff's NHPA claims for lack of standing.[5]

### 4. The Plaintiff's Bankruptcy Petition Does Not Affect the Status of the Conveyance of the Fort Ritchie Property to PenMar

In an attempt to demonstrate injury, the plaintiff argues that the defendants' approval of PenMar's conveyance application violated the plaintiff's petition for Chapter 11 bankruptcy. Am. Compl. ¶ 117. Specifically, the plaintiff contends that an automatic stay provision which protects a debtor's estate against claims by his creditors should apply to the Fort Ritchie property when the plaintiff filed for Chapter 11 bankruptcy protection. *Id*. ¶ 151 (citing 11 U.S.C. § 362). The plaintiff asks the court to nullify the defendants' approval of the conveyance to PenMar because the Army moved to transfer the property while this case was on appeal and because the approval took place after the plaintiff filed suit to recover $1.8 million in unwarranted lease payments for the Fort Ritchie property. Pl.'s Opp.'n at 28. The defendants assert that an automatic stay does not preclude the conveyance because the Fort Ritchie property did not belong to the plaintiff. Defs.' Mot. at 15.

Three provisions of 11 U.S.C. § 362 provide for an automatic stay for claims against a debtor's property or estate when the debtor files a petition for Chapter 11 bankruptcy relief. 11 U.S.C. § 362 (stating that a stay applies to "any act to obtain possession of property of the estate

---

[5] The plaintiff also brings its challenges to the alleged commercial development plans by citing various preservation agreements to which the defendants are bound. The plaintiff discusses, for example, a community development plan, Am. Compl. ¶ 60, a Programmatic Agreement with the Maryland State Historic Preservation Officer, *id*. ¶ 121, and Design Guidelines, *id*. ¶ 125. The plaintiff is not a party to any of these agreements, nor does it purport to be. It, therefore, lacks standing to sue to enforce these agreements. *See Lemon v. Harvey*, 2006 WL 2465710 at *7 (D.D.C. Aug. 25, 2006).

or of property from the estate or exercise control over property of the estate," "any act to create, perfect or enforce any lien against the property of the estate," and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title"). The statute is intended to give debtors "a breathing spell" from creditors and to stop all collection and foreclosure actions against them. *In re Javens*, 107 F.3d 359, 363 (6th Cir. 1997).

The plaintiff alleges injury because it had previously leased the Fort Ritchie property, the property was part of the plaintiff's estate for purposes of 11 U.S.C. § 362, and the Army violated the automatic stay by conveying the property to PenMar. Pl.'s Opp.'n at 27. The statute however, explicitly excludes a debtor's interest in the lease of nonresidential property if the lease had expired or was terminated before the commencement of the case. 11 U.S.C. § 541(b)(2). Although the plaintiff previously leased the Fort Ritchie property, PenMar evicted the plaintiff from the property in April 2001. Am. Compl. ¶ 53. That eviction terminated the plaintiff's interest in the property. *Robinson v. Chicago Housing Auth.*, 54 F.3d 316, 318-19 (7th Cir. 1995) (stating that any method that fully severs the rights of the tenant in the property renders the lease expired). Only after PenMar evicted the plaintiff did the plaintiff file for bankruptcy in May 2002. *Id*. ¶ 151. Because the plaintiff's interest in the property terminated prior to the plaintiff's filing for bankruptcy, the automatic stay provision does not apply. *In re Pettit*, 217 F.3d 1072, 1081 (9th Cir. 2000) (holding that if property is not part of the individual's estate at the time he files a bankruptcy petition, no automatic stay provision applies to the property).

The plaintiff also argues that it is entitled to an automatic stay because it was trying to recover a rent claim against the defendant. Pl.'s Opp.'n at 28. Section 362, however, only applies to claims made by creditors against debtors (here, the plaintiff) and it does not address

actions brought by the debtor which would inure to the benefit of the bankrupt estate.  *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C. Cir. 1989) (quoting *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982)).  Here, however, PenMar is not trying to collect a claim against the plaintiff.  On the contrary, the plaintiff is trying to recover a rent claim against PenMar.  Pl.'s Opp.'n at 28.  Therefore, the automatic stay provision has no effect on the conveyance of Fort Ritchie.  Accordingly, the plaintiff has alleged no injury and lacks standing to bring its claim.

### IV.   CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2006.

RICARDO M. URBINA
United States District Judge